UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAN IV PACKARD SQUARE LLC,

      Plaintiff,                                  Civil Action No. 19-CV-12360

vs.                                      HON. BERNARD A. FRIEDMAN

CRAIG SCHUBINER,

      Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL AFFIRMATIVE DEFENSE

        This matter is presently before the Court on plaintiff's motion for summary judgment (ECF No. 129), defendant's motion for summary judgment (ECF No. 130), and defendant's motion for leave to file a supplemental affirmative defense (ECF No. 153).  All three motions are fully briefed.  Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.  For the reasons stated below, the Court shall grant plaintiff's motion for summary judgment, deny defendant's motion for summary judgment, and deny defendant's motion for leave to file a supplemental affirmative defense.

        This case arises from a construction project gone awry.  In October 2014, Packard Square LLC ("PS") entered into a $53.78 million loan agreement with a private equity firm, plaintiff Can IV Packard Square LLC ("Can IV"), to finance the construction of a mixed-use development consisting of apartments and retail space on a lot located on Packard Street in Ann Arbor, Michigan.  To secure the loan, PS signed a promissory note and granted Can IV a mortgage in the property.  Additionally, as part of the loan agreement, PS's principal and sole member, defendant Craig

Schubiner ("Schubiner" or "guarantor"), executed two guaranties.  In the first, entitled "Non-Recourse Carve-Out Guaranty," Schubiner guaranteed repayment of the construction loan; in the second, entitled "Completion Guaranty," he promised to pay the "completion cost deficiency" in the event that PS failed to complete construction and plaintiff proceeded to do so.  A copy of the Completion Guaranty is attached to the complaint as Exhibit 1.

In 2016 PS defaulted by, among other things, failing to meet certain construction milestone dates that were required by the loan documents.[1]  Plaintiff accelerated the note and brought suit in Washtenaw Circuit Court to foreclose the mortgage and to have a receiver appointed.  On plaintiff's motion, the state court appointed a receiver to take possession of the property and to borrow funds to complete construction.  *See* Compl. Ex. 2.  The Michigan Court of Appeals affirmed the circuit court's appointment of a receiver, based on "[d]efendant's default, the condition of the property, defendant's likely inability to secure the property before winter, defendant's inability to complete the project without further delays, [and] defendant's inability to discharge the liens and protect plaintiff's and defendant's interests in the property."  *CAN IV Packard Square LLC v. Packard Square LLC*, No. 335512, 2018 WL 521843, at *5 (Mich. Ct. App. Jan. 23, 2018).  The Michigan Supreme Court denied PS's application for leave to appeal.  *See Can IV Packard Square LLC v. Packard Square LLC*, 917 N.W.2d 624 (Mich. 2018).

As the Michigan Court of Appeals has noted, "[a]fter the appointment of the receiver,

---

[1] Most importantly, the loan documents required the project to be substantially completed by October 25, 2016, and to be fully completed by November 18, 2016.  *See CAN IV Packard Square LLC v. Packard Square LLC*, No. 335512, 2018 WL 521843, at *1 (Mich. Ct. App. Jan. 23, 2018).  At the October 27, 2016, hearing on plaintiff's motion for the appointment of a receiver, "defendant conceded several times that the project was only about 60% or even less completed."  *Id.* at *3.

2

the Washtenaw case proceeded with discovery. Plaintiff eventually moved for summary disposition on its foreclosure claim, seeking foreclosure both on Packard Square's mortgage and on a higher priority mortgage securing an additional loan that plaintiff had made to the receiver to complete construction." *Can IV Packard Square, LLC v. Schubiner*, No. 352510, 2021 WL 1711593, at *2 (Mich. Ct. App. Apr. 29, 2021).[2] In September 2018, the Washtenaw Circuit Court "entered a judgment of foreclosure authorizing the sale of the property at a sheriff's sale." *Can IV Packard Square, LLC v. Packard Square, LLC*, 939 N.W.2d 454, 455 (Mich. Ct. App. 2019), *appeal denied*, 939 N.W.2d 686 (Mich. 2020), *recon. denied*, 947 N.W.2d 810 (Mich. 2020). Plaintiff purchased the property at the sheriff's sale on November 15, 2018, with a $75 million credit bid. When PS did not redeem the property within the statutory six-month period, plaintiff obtained title and all of PS's rights in the property were extinguished. *See id.* at 459. The Michigan Court of Appeals affirmed the trial court's order confirming the sheriff's sale and the judgment of foreclosure. *See Can IV Packard Square, LLC v. Packard Square, LLC*, No. 348857, 2021 WL 2617988, at *1 (Mich. Ct. App. June 24, 2021).

"On July 11, 2019, the Washtenaw Circuit Court entered an order approving the receiver's final report, discharging the receiver's bond, and discharging the receiver, and Packard Square filed an appeal as of right from that order . . . ." *Can IV Packard Square, LLC*, 2021 WL 1711593, at *2. The Michigan Court of Appeals affirmed the Washtenaw Circuit Court in all

---

[2] The Washtenaw Circuit Court authorized the receiver to borrow approximately $37.4 million from plaintiff to finance completion of the project. *See* Compl. Ex. 6 (PageID.87). This loan was secured by a receiver's mortgage. When the receiver failed to repay the loan, due to its failure to find a suitable buyer for the completed project, plaintiff foreclosed the receiver's mortgage and PS's mortgage simultaneously. *See* Compl. Ex. 3.

respects, noting: "Two things have become clear in the tortured course of the appellate litigation involving these parties—first, the litigious nature of defendant, and second, that none of defendant's myriad and sometimes confusing arguments carry weight. This Court once again finds in favor of plaintiff." *Can IV Packard Square LLC*, 2021 WL 2617988, at \*21.

Meanwhile, in 2018, plaintiff sued defendant in Oakland Circuit Court to enforce his guaranty to repay the construction loan if any of various enumerated events occurred, including PS's filing for bankruptcy.[3]  In December 2019, that court granted summary disposition for plaintiff and denied defendant's counterclaims, finding defendant liable on this guaranty in the amount of approximately \$13.9 million.[4]  In April 2021, the Michigan Court of Appeals affirmed this judgment. *See Can IV Packard Square, LLC,* 2021 WL 1711593. It noted that plaintiff "acted within its contractual authority when it decided to apply the proceeds of the foreclosure sale first to the receiver loan and then to the original loan." *Id.* at \*7. The court of appeals specifically affirmed the trial court's ruling that "Packard Square's defaults triggered defendant's obligations under the guaranty contract." *Id*. at \*10. Under the receiver's guidance, the project was eventually completed in February 2019 when the City of Ann Arbor issued a final certificate of occupancy. *See* Compl. Ex. 10.

---

[3] A copy of the parties' "Non-Recourse Carve-Out Guaranty" is attached to defendant's summary judgment motion as Exhibit A (PageID.8609-25). The events that would trigger defendant's obligations as guarantor are listed in § 1(b)(ii). The first listed event is "any voluntary bankruptcy or insolvency filing by Borrower, Borrower's Member or Guarantor." On September 5, 2017, PS filed a Chapter 11 petition with the Bankruptcy Court for the Eastern District of Michigan. *See In re Packard Square LLC*, No. 17-52483 (Bankr. E.D. Mich.).

[4] As the Michigan Court of Appeals explained, this amount was the result of plaintiff applying its \$75 million credit bid first to the receiver indebtedness of \$37,823,096.45 and then to the balance owed on the original PS loan. This left a "balance owed by defendant of \$13,992,936.05." *Can IV Packard Square, LLC,* 2021 WL 1711593, at \*11.

4

In the present case, which was commenced three months after the project was completed, plaintiff seeks to enforce the second of defendant's guaranties, the "completion guaranty," a copy of which is attached to the complaint as Exhibit 1.  In this guaranty, defendant guaranteed that "Final Completion shall occur in accordance with and within the time limits set forth in the Loan Documents" and that "Final Completion shall occur free and clear of any . . . liens." Compl. Ex. 1 § 1 (PageID.24).  Defendant's liability under the guaranty "shall be limited to the payments of Completion Cost Deficiencies, as required by this Section 3." *Id.* § 3 (emphasis added) (PageID.25).

Section 3 of the Completion Guaranty, entitled Obligations of the Guarantor, states in relevant part:

> (a) If an Event of Default exists and (i) Lender thereafter acquires the Property by foreclosure . . . or (ii) a receiver for the Property is appointed by a court of competent jurisdiction at the request of Lender, Lender may, in its sole and absolute discretion, complete the Construction or, if a receiver has been so appointed, may, in its sole and absolute discretion, fund the completion of the Construction by the receiver . . . .

> (b) Guarantors shall pay Lender any Completion Cost Deficiency (as defined below) determined by Lender from time to time during the course of Construction within five (5) days after Lender's written demand.

> (c) "Completion Cost Deficiency" means, as of the date of determination, the amount by which the sum of (i) all remaining unpaid and projected Hard Costs and Soft Costs in accordance with the Construction Budget, the Construction Contract and the Loan Documents and (ii) all remaining and projected costs to enable the performance and satisfaction of all of the covenants of Borrower contained in the Loan Documents through the Final Completion with respect to Hard Costs and Soft Costs, as of such date, exceeds (A) all undisbursed Loan funds allocated to payment of Hard Costs or Soft Costs, (B) all sums in the Construction Reserve allocated to payment of Hard Costs or Soft Costs, and (C) all sums in the Construction

5

Disbursement Account allocated to payment of Hard Costs or Soft
Costs.

*Id.* Section 4 of the guaranty, entitled Remedies, states:

If Guarantor fails to promptly perform any of the Guaranteed
Obligations and shall not have cured such failure within ten (10) days
of Lender's demand, Lender shall have the following remedies:

(a) Commence any and all remedies for an Event of Default under the
Loan Agreement, Security Instrument and other Loan Documents;

(b) At Lender's option, . . . to proceed to perform on behalf of
Guarantor any or all of the Guaranteed Obligations and Guarantor
shall upon demand and whether or not construction is actually
completed by Lender, pay to Lender all sums expended by Lender in
performing the Guaranteed Obligations together with interest thereon
at the highest rate specified in the Note; and

(c) From time to time and without first requiring performance by
Guarantor or exhausting any or all security for the Loan, to bring any
action at law or in equity or both to compel Guarantor to perform the
Guaranteed Obligations, and to collect in any such action
compensation for all loss, cost, damage, and expense sustained or
incurred by Lender as a direct or indirect consequence of the failure
of Guarantor to perform the Guaranteed Obligations together with
interest thereon at the rate applicable to the principal balance of the
Note.

*Id.* (PageID.26). In § 14 of the Guaranty, guarantor also agreed to "reimburse Lender for all actual

attorneys' fees, costs and expenses . . . incurred by Lender in connection with the enforcement of

Lender's rights under this Guaranty or any of the other Loan Documents . . . ." *Id.* (PageID.33).

On April 25, 2019, plaintiff presented defendant with a demand that he pay the

completion cost deficiency in the amount of $20,087,324[5] pursuant to the Completion Guaranty.

---

[5] Plaintiff arrived at this number by subtracting the "budget per loan agreement"
($37,920,250) from the "total costs to complete" ($58,007,575). *See* Compl. Ex. 11 at 2
(PageID.241). *See also* Compl. ¶¶ 39, 49.

*See* Compl. Ex. 11.  When defendant disregarded this demand, plaintiff filed the instant action the following month.  Plaintiff asserts a single claim for breach of contract.

### Legal Standards

Both parties seek summary judgment on plaintiff's claim. In deciding this motion, the Court

> must view the evidence in the light most favorable to the party opposing the motion for summary judgment.  *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). "This includes drawing 'all justifiable inferences' in the nonmoving party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

In a breach of contract action,

> a party claiming a breach must establish (1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach.  *Dunn v. Bennett*, 303 Mich. App. 767, 774, 846 N.W.2d 75 (2013). The measure of damages in relation to a breach of contract is "'the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached.'"  *Ferguson v. Pioneer State Mut. Ins. Co.*, 273 Mich. App. 47, 54, 731 N.W.2d 94 (2006) (citation omitted).  "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach."  *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512, 667 N.W.2d 379 (2003).

*Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921-22 (Mich. Ct. App. 2014).  An unambiguous contract must be enforced "as written." *Trader v. Comerica Bank*, 809 N.W.2d 429, 433 (Mich. Ct. App. 2011).  Further,

a guaranty contract—like a surety contract—is a special kind of contract. As this Court stated in *Ann Arbor v. Massachusetts Bonding & Ins. Co.*, 282 Mich. 378, 380, 276 N.W. 486 (1937),

> The undertaking of a surety is to receive a strict interpretation. The surety has a right to stand on the very terms of the contract. To the extent and in the manner and under the circumstances pointed out in his obligation, the surety is bound, and no further. The liability of a surety is not to be extended by implication beyond the terms of his contract. *Miller v. Steward*, [22 U.S. (9 Wheat) 680, 6 L. Ed. 189 (1824)]. A surety cannot be held beyond the precise terms of his agreement. *Walsh v. Bailie*, 10 Johns 180 [N.Y. Sup., 1813].

*Bandit Indus., Inc. v. Hobbs Int'l, Inc.*, 620 N.W.2d 531, 534-35 (Mich. 2001).

*Analysis*

        Defendant appears to concede, as he must, that plaintiff has established the first two elements of its claim, i.e., that "there was a contract" (the completion guaranty) and that he breached it (by not completing the project when PS failed to do so).[6] In opposing plaintiff's motion, defendant contests the third element of the claim, damages. He argues that plaintiff "has no viable claim" under the completion guaranty because plaintiff was required by § 3(b) to determine any deficiency "from time to time"; that plaintiff is improperly attempting to rewrite the guaranty to hold him accountable for the receiver's loan; that "[o]nce the Plaintiff abandoned the PS Loan for construction purposes, the only amounts that could be input into the guaranty formula was '0'"; that

---

     [6] Defendant does assert that "the formula used in the Agreement was nullified once the Plaintiff made the new loan to the Receiver and completed the construction under that loan." Def.'s Resp. at 10. However, this argument is defeated by the plain terms of § 3(a) of the guaranty, which expressly permitted plaintiff, in the event of default, to "complete the Construction or, if a receiver has been so appointed, . . . [to] fund the completion of the Construction by the receiver."

plaintiff has "suffered no damages"; and that plaintiff has "already obtained a windfall" and therefore should be awarded nothing further under the guaranty.  Def.'s Resp. at 4-24.

The Court rejects defendant's arguments.  Despite defendant's efforts to muddy the waters, the completion guaranty is crystal clear.   In the event of PS's default (a fact that is undeniably established), defendant promised to pay plaintiff all hard and soft costs to complete construction of the project minus (A) undisbursed loan funds, (B) "all sums in the Construction Reserve," and (C) "all sums in the Construction Disbursement Account."  Completion Guaranty § 3(c).  Plaintiff made this calculation and demanded that defendant pay it.  When defendant failed to do so within five days, he was in breach of the guaranty.  Defendant does not contest the accuracy of the numbers plaintiff used in making this calculation, and he has offered no alternative calculation other than to argue that he owes nothing.  Under these circumstances, plaintiff's calculation of the amount due under the guaranty is "undisputed for purposes of th[is] motion."  Fed. R. Civ. P. 56(e)(2).

In particular, the Court rejects defendant's argument that plaintiff can claim nothing under the guaranty because it neglected to calculate any alleged deficiency "from time to time."  The ongoing costs of construction were calculated monthly, and filed with Washtenaw Circuit Court, throughout the receivership.  *See* Pl.'s Mot. for Summ. J. Ex. 12.  As defendant was aware of these costs, he could have made the simple calculation himself at any time to determine the deficiency, if he had wished to do so.  Defendant does not explain how he was harmed by plaintiff's failure to make this calculation "from time to time," nor does he suggest that he would have paid the deficiency if plaintiff had done so.

The Court also rejects defendant's suggestion that he owes nothing because plaintiff

"abandoned" its loan agreement with PS and funded the project under a different loan agreement with the receiver. The guaranty specifically authorized plaintiff to seek the appointment of a receiver if PS defaulted and, in that event, to "fund the completion of the Construction by the receiver." Completion Guaranty § 3(a). The parties clearly envisioned this scenario, and plaintiff did not "unilaterally modify" the guaranty, Pl.'s Resp. at 9, by proceeding in this fashion.

Nor is there any merit to defendant's argument that plaintiff "is attempting a back door route to collecting the amount that it spent on the Receiver loan." Def.'s Resp. at 24. Plaintiff does not seek to hold defendant accountable for that loan, but to hold him to the terms of his guaranty to pay the completion cost deficiency. That term, as defined in § 3(b), requires the inclusion of "all remaining and projected costs to enable the performance and satisfaction of all of the covenants of Borrower contained in the Loan Documents through the Final Completion with respect to Hard Costs and Soft Costs." This is equivalent to the amount loaned to the receiver, but it is just one item in the deficiency calculation. Plainly, enforcement of the completion guaranty does not make defendant a guarantor of the receiver's loan.

The Court also rejects defendant's argument that plaintiff has no damages and that plaintiff would receive a windfall if it is permitted to enforce the completion guaranty. The measure of damages for a breach of contract is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe,* 865 N.W.2d at 921-22 (quoting *Ferguson,* 731 N.W.2d at 99). In the present case, if defendant had honored the completion guaranty, plaintiff would have received the funds in the amount the parties agreed plaintiff is entitled to receive, i.e., the completion cost deficiency. That is the "pecuniary value of the benefit" plaintiff expected from this guaranty. It is irrelevant whether, as defendant argues, the property is now worth

10

more than the parties expected or that it is worth more than plaintiff's $75 million credit bid or that plaintiff profited from certain tax credits or from defendant's contribution of the land on which the project was built or from the rental income the property is producing.  *See* Def.'s Resp. at 16-24. These arguments show only that plaintiff may have realized a return on its investment, but they do nothing to detract from defendant's obligation under the guaranty, which is to pay the completion cost deficiency as calculated in the agreed upon fashion.

In addition to opposing plaintiff's motion for summary judgment, defendant seeks summary judgment in his favor on the grounds that plaintiff is barred by the doctrine of res judicata from enforcing the completion guaranty.  Defendant argues that if plaintiff wished to enforce the completion guaranty, it was required to do so in the same lawsuit that it filed in Oakland Circuit Court to enforce the "Non-Recourse Carve-Out Guaranty."

The Court rejects this argument because defendant has waived this defense.  Federal Rule of Civil Procedure 8(c)(1) states that various defenses, including res judicata, must be presented in the response to the complaint.  In the present case, defendant's answer to the complaint, filed on August 9, 2019, listed thirty-six affirmative defenses in thirty-two numbered paragraphs,[7]

---

[7] Defendant asserted the following defenses: (1) failure to state a claim; (2) waiver, acquiescence, estoppel, unclean hands, and laches; (3) failure to mitigate damages; (4) "damages were caused by [plaintiff's] own conduct"; (5) plaintiff breached first; (6) plaintiff breached first and made it impossible for defendant to perform; (7) "Plaintiff did not perform its obligations in good faith"; (8) the guaranties are unenforceable because "they contain provisions that conflict with applicable law"; (9) the guaranties are unenforceable as against public policy; (10) the guaranties are unenforceable because plaintiff "altered the underlying debt and loan documents through their [sic] conduct"; (11) the guaranties are unenforceable "because Plaintiff impaired the collateral"; (12) the guaranties are unenforceable "because "Plaintiff modified the scope and nature of the obligations and risk of Defendant as Guarantor"; (13) failure "to provide proper notice of foreclosure sale"; (14) failure "to hold a commercially reasonable foreclosure sale"; (15) defects in the foreclosure notices; (16) "Plaintiff negligently administered the loan"; (17) "Plaintiff failed to satisfy conditions precedent"; (18) "Plaintiff failed to provide proper notice of

11

but res judicata was not among them.  Defendant therefore now relies on a defense he first raised

in his summary judgment motion, filed seventeen months after he answered the complaint.  And

defendant did not seek leave to assert this heretofore unmentioned defense until he filed his "motion

for leave to file supplemental affirmative defense" on May 14, 2021, twenty-one months after

answering.

Plaintiff correctly argues that defendant waived the defense of res judicata by not

asserting it with his answer or at any time during discovery.  "It is a frequently stated proposition

of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense

as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the

case."  5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1278 (3d ed.).  If an affirmative

defense is not raised with the answer, waiver may nonetheless be avoided if the defense is raised by

motion.  As the Sixth Circuit has stated,

> [u]nder Federal Rule of Civil Procedure 8(c), a party must raise an
> affirmative defense such as estoppel or res judicata in a responsive
> pleading. But we have held that affirmative defenses may also be
> raised by motion, or even for the first time during the course of
> summary judgment proceedings. *See id.* [*Westwood Chem. Co. v.*

---

the debt"; (19) "Plaintiff profited from the foreclosure action" by imposing impermissible charges and fees; (20) "Plaintiff included improper charges"; (21) "The alleged balance due includes the Receiver Loan"; (22) "Plaintiff gave the Borrower assurances of forbearance and promised . . . not to default Borrower"; (23) "Plaintiff prevented the Borrower from completing the project"; (24) "Plaintiff interfered with Borrower's efforts to obtain alternate financing"; (25) "Plaintiff refused to fund Borrower's construction costs, and thus made it impossible to finish the project, which impaired the collateral"; (26) "Defendant did not consent to loan modifications and/or the impairment of collateral"; (27) "Plaintiff subordinated the loan to a later loan"; (28) plaintiff "made it impossible for Borrower to perform"; (29) "Plaintiff manipulated its credit bid at the foreclosure sale"; (30) "the bankruptcy filing was dismissed within approximately one month and had no material effect on Plaintiff"; (31) "Plaintiff has suffered no damages"; and (32) "Plaintiff's claims are barred by its own fraudulent conduct."  ECF No. 2 (PageID.252-56).

> *Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)] (finding that a motion to dismiss raising res judicata properly put the issue before the district court); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (finding that an affirmative defense, though raised for the first time in response to a summary judgment motion, was not waived on appeal because plaintiffs were or should have been aware that the defendant intended to rely on such a defense). . . . The purpose of Rule 8 "is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore*, 992 F.2d at 1445; *see also Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991) ("It has been held that a defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.") (quotation marks and citation omitted).

*Am. Fed'n of State, Cnty. & Mun. Emps. v. Charter Cnty. of Wayne*, 704 F. App'x 401, 405 (6th Cir. 2017).

In the present case, there is nothing in the record to suggest that plaintiff was or should have been aware that defendant intended to assert res judicata as a defense. Defendant did not finally assert this defense until he filed his summary judgment motion on January 15, 2021. By that time, *seventeen months* after defendant filed his answer asserting his long list of defenses, the parties had engaged in discovery for at least one year. The Sixth Circuit has held that such extreme delay results in the forfeiture of defenses that could and should have been asserted earlier in the case.[8] *See, e.g., Wallace v. Coffee Cnty., Tenn.*, 852 F. App'x 871, 875 (6th Cir. 2021) (holding that

---

[8] At the latest, this defense ripened on December 17, 2019, when the Oakland Circuit Court entered judgment for plaintiff on its "non-recourse carve-out guaranty." In fact, defendant could have asserted the defense along with the others when he answered the complaint (in August 2019) because although the Oakland Circuit Court had not yet entered judgment, defendant's argument is that plaintiff was required to *bring* the instant case in that court because the two guaranties arise from the same transaction, and the Oakland case was pending when the instant case was commenced. In any event, defendant has offered no convincing explanation for why he first asserted his res judicata defense in January 2021, when he filed his summary judgment motion.

13

the statute of limitations defense was forfeited because defendant first raised the defense "more than a full year after litigation commenced"); *U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 491 (6th Cir. 2003) (concluding that the equitable estoppel defense was waived because defendant first raised the defense in its response to plaintiff's summary judgment motion, nine months after the complaint was filed); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990) (indicating that the defense of accord and satisfaction was waived because "defendants waited almost a year before filing their answer and almost nineteen months before raising the [defense] in their motion for summary judgment"; court stated that "to allow the defendants to raise this affirmative defense initially at the summary judgment motion would violate Rule 8(c) and unfairly prejudice the plaintiff, which is why the rule requires that such a defense be asserted in the answer"). *See also Rogers v. Internal Revenue Serv.*, 822 F.3d 854, 865 (6th Cir. 2016) (stating that "where there is unfair prejudice, a party is taken by surprise, or unnecessary delay, the general waiver rule applies; on the other hand, where there is no unfair prejudice, surprise, or delay, the general waiver rule is left to the district court's discretion"). The Court concludes that defendant waived the defense of res judicata by failing to assert it in a timely fashion.

Additionally, the Court shall deny defendant's motion to amend his answer to assert this defense because doing so would be futile. Leave to amend a pleading must be granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), but justice does not require that leave be granted to amend the answer to assert a futile defense. *See Chicago Ins. Co. v. Capwill*, 514 F. App'x 575, 577 (6th Cir. 2013) (stating that the district court's failure to rule on defendant's motion for leave to assert a new defense was harmless because the requested amendment would have been futile); *Sobol v. Imprimis Pharms.*, No. 16-14339, 2018 WL 2424009 (E.D. Mich. May 29, 2018) (denying as

futile defendant's motion for leave to amend its answer to assert a waived defense); *Camalo v. Xerox Corp.*, No. 16-13667, 2017 WL 10795025 (E.D. Mich. Aug. 11, 2017) (denying as futile defendant's motion to amend its answer to assert counterclaims); *Mauro v. Cnty. of Macomb*, No. 16-11533, 2016 WL 6275395, at *1 (E.D. Mich. Oct. 27, 2016) (noting that "a court need not grant leave to amend [the answer] when the proposed amendment would be futile, result in undue dely, or is brought in bad faith").

Res judicata is a futile defense in the present case because defendant waived this and all other defenses contractually. The Court notes in particular the following sections of the Completion Guaranty:

6. <u>Guarantor's Waivers</u>.

(a) *Guarantor waives*, to the extent permitted by applicable law:

(i) any defense based upon any legal disability or other defense of Borrower, any other guarantor or other Person, or by reason of the cessation or limitation of the liability of Borrower from any cause;

(ii) any defense based upon any lack of authority of the officers, directors, partners or agents acting or purporting to act on behalf of Borrower or any member of Borrower or any defect in the formation of Borrower or any member of Borrower;

(iii) any defense based upon the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender or Guarantor;

(iv) *any defense based upon Lender's election of (or election not to pursue) any remedy against Guarantor or Borrower or any of them, whether or not such defense might otherwise be available under applicable law*;

(v) any defense based upon Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay all sums

payable under the Note or any of the other Loan Documents;

(vi) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal;

(vii) any defense based upon Lender's election of the application of Section 1111(b)(2) of the Bankruptcy Code or any similar provision of any successor statute;

(viii) any defense based upon any borrowing or any grant of a security interest under Section 364 of the Bankruptcy Code;

(ix) *any and all rights and defenses*, including, without limitation, any rights of subrogation, reimbursement, indemnification and contribution, *which might otherwise be available to Guarantor under any applicable Laws*, any right to enforce any remedy which Lender may have against Borrower and any right to participate in, or benefit from, any security for the Note or any of the other Loan Documents now or hereafter held by Lender;

(x) presentment, demand, protest and notice (except as otherwise indicated herein) of any kind;

(xi) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement hereof; and

(xii) any defense whether otherwise available to Guarantor under any applicable Laws, based upon Lender's election to (or election not to) pursue any remedy against all or any of the Collateral.

*   *   *

7. <u>Guarantor's Representations, Warranties, Acknowledgments and Covenants</u>.   Guarantor represents, warrants, acknowledges and covenants, jointly and severally, that: . . .

(g) None of the Guaranteed Obligations are usurious and, to the extent permissible by applicable law, *Guarantor waives any counterclaim, offset or defense with respect to any of the Guaranteed Obligations or with respect to this Guaranty hereunder or any of the Loan Documents, or any other related agreement, instrument or document to which Guarantor is a party*;

16

\* \* \*

8. <u>Guarantor's Acknowledgments</u>.   Guarantor hereby agrees and acknowledges:

(a) Guarantor has been advised by legal counsel in the negotiation, execution and delivery of this Guaranty;

\* \* \*

15. <u>Additional and Independent Obligations</u>.  This Guaranty is a continuing guaranty of payment and performance and not of collection, cannot be revoked by Guarantor and shall continue to be effective with respect to Guarantor's obligations hereunder arising or created after any attempted revocation hereof.   *Guarantor's obligations hereunder shall be in addition to and shall not limit or in any way affect the obligations of Guarantor under any other existing future guaranties* or indemnities, unless said other guaranties or indemnities are expressly modified or revoked in writing so as to preclude such warranties from limiting or affecting this Guaranty, and any payment under such other guaranties or indemnities shall not reduce Guarantor'[s] obligations hereunder.  *This Guaranty is independent of the obligations of Borrower under the Note and the other Loan Documents.  Lender may bring a separate action to enforce the provisions hereof against Guarantor without taking action against Borrower or any other guarantor or any other party or joining Borrower or any other guarantor or any other party as a party to such action.  Lender's rights under this Guaranty shall be in  addition to the rights and benefits Lender may have under the other Loan Documents.*

\* \* \*

18. <u>Enforceability</u>.  *Guarantor hereby acknowledges that*:  (a) the Guaranteed Obligations are complex in nature; *(b) numerous possible defenses to the enforceability of the Guaranteed Obligations may presently exist and/or may arise hereafter; (c) as part of Lender's consideration for entering into the Loan, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses*; and (d) Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type of the Loan. Given all of the above, Guarantor does hereby represent,  warrant and acknowledge to Lender that Guarantor is fully informed  regarding,

17

*and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses; (ii) the circumstances under which such defenses may arise; (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.*

\*   \*   \*

23. <u>Entire Agreement; Waiver</u>. This Guaranty contains the entire understanding and agreement of Guarantor and Lender with respect to the subject matter hereof. This Guaranty may not be altered or amended except by the written agreement of Guarantor and Lender. *No action, failure, delay or omission by Lender in exercising any rights and remedies hereunder or under any Loan Document or otherwise shall constitute a waiver of, or impair, any of the rights or privileges of Lender hereunder. No single or partial exercise of any such right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy.* Such rights and remedies are cumulative and not exclusive of any rights and remedies provided by Laws or otherwise available. No waiver of any such right or remedy shall be effective unless given in writing by Lender. No waiver of any right or remedy shall be deemed a waiver of any other right or remedy hereunder.

Compl. Ex. 1 (PageID.27-37) (emphasis added).

It is apparent from these provisions, particularly the italicized passages, that defendant waived any defenses to enforcement of the completion guaranty, including the defense of res judicata he now seeks to assert. The language in § 18 is ironclad: Defendant acknowledged that "numerous possible defenses" might arise and that he "waive[d] and relinquish[ed] . . . all such defenses." Defendant likewise agreed in § 7(g) to "waive *any . . . defense* with respect to any of the Guaranteed Obligations or *with respect to this Guaranty."* And in § 23, defendant specifically agreed that no action or inaction by plaintiff regarding the enforcement of any of its rights would

18

preclude it from enforcing any of its other rights.  It is difficult to imagine how defendant's waiver

of defenses, including the defense of res judicata, could have been articulated more clearly and

definitively than was done in this guaranty.

An analogous situation arose in *JP Morgan Chase Manhattan Bank v. Winget*, 704

F. App'x 410, 419 (6th Cir. 2017).  In that case, the defendant guarantor argued that the doctrine of

res judicata barred plaintiff from enforcing the provision of the guaranty stating that he was liable

for litigation expenses because plaintiff failed to seek those expenses in the prior collection actions

plaintiff brought against defendant.  In affirming the district court's rejection of this argument, the

court of appeals stated:

> [E]ven if res judicata applied, the district court properly determined
> that Winget [the guarantor] and the Trust contractually waived any
> res judicata defense in the Guaranty, and they are bound by that
> waiver. Courts frequently enforce waivers of defenses, including
> waivers of res judicata. *See Fourteen Corp. v. Magnoli*, No.
> 13-11803, 2013 WL 4551705, at *6 (E.D. Mich. Aug. 28, 2013)
> (granting summary judgment after finding a guarantor's affirmative
> defenses barred by a contractual waiver of certain defenses, including
> res judicata); *LNV Corp. v. Savannah Dev., LLC*, No. 12-13562, 2014
> WL 4978668, at *5-6 (E.D. Mich. Oct. 6, 2014) (barring assertion of
> equitable estoppel based on a contractual waiver); *Hartford Cas. Ins.
> Co. v. Comanche Constr., Inc.*, 103 F. Supp. 3d 900, 907 (W.D. Tenn.
> 2015) (holding that an agreement between parties constituted a
> waiver of res judicata when that agreement stated that nothing in the
> document would operate to prejudice a subsequent claim for
> declaratory relief).
>
> Section 13 of the Guaranty provides in relevant part that "[n]o failure
> or delay by the Administrative Agent or any Lenders in exercising
> any right, power or privilege hereunder shall operate as a waiver
> thereof nor shall any single or partial exercise thereof preclude any
> other or further exercise thereof or the exercise of any other right,
> power or privilege." RE 487-1, Page ID #16724. The plain language
> of this provision indicates that Chase, as the Administrative Agent,
> can exercise a right under the Guaranty regardless of any perceived
> or real delay in exercising that right. Under the Guaranty, Chase has

the right to the costs and expenses it incurred in collecting on the debt of the Guaranteed Obligations as governed by Section 17 of the Guaranty. Therefore, any alleged failure to exercise that right does not waive Chase's right to later collect under Section 17 of the Guaranty.

The language of Section 4 of the Guaranty further reinforces that the district court correctly determined that Defendants contractually waived any res judicata defense. Section 4 provides that Defendants' obligations under the Guaranty are "unconditional and absolute," and that they "shall not be released, discharged or otherwise affected by" any action or omission by Chase that might otherwise prevent enforcement of the obligations on any legal or equitable grounds. (*Id.* at Page ID #16719) Winget and the Trust's argument that Chase had to exercise its rights under Section 17 in the 2005 and 2006 Actions or lose those rights plainly conflicts with several provisions of the Guaranty.

*JP Morgan Chase Manhattan Bank v. Winget*, 704 F. App'x 410, 419 (6th Cir. 2017). The court of appeals also rejected the guarantor's argument that the contractual waivers of defenses "are against public policy," noting that the parties "were sophisticated negotiators and could have removed the 'boilerplate' language for waivers that prohibit [the guarantor's and the borrower's] res judicata defense." *Id.* 419-20.

Just as in *Winget*, defendant's contractual waiver of all defenses is clear, the guaranty was negotiated by sophisticated parties, and "the terms of the contract must stand." *Id.* at 420. Defendant may not assert res judicata as a defense because he waived this and all other defenses. Defendant's motion to amend his answer to assert this defense must therefore be denied as futile. And because res judicata is the only grounds defendant asserts in support of his summary judgment motion, that motion must be denied as well.

Finally, even if defendant had not waived res judicata as a defense and even if the Court permitted him to raise it, the defense would fail on the merits. As noted in *Winget*, "[i]n

Michigan, a claim is barred by res judicata if the following three elements are present: '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'"   *Id.* at 418 (quoting *Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 759 (Mich. 2007).   The doctrine does not apply in the present case because the "non-recourse carve-out guaranty" and the "completion guaranty" are separate contracts with separate purposes, as the former guaranteed repayment of the loan and the latter guaranteed completion of the project.   Defendant agreed that plaintiff could enforce the two contracts separately, *see, e.g.,* Completion Guaranty § 23, and Michigan case law recognizes that separate contracts may be sued upon in separate actions.   *See Mich. Nat'l Bank v. Martin*, 172 N.W.2d 920, 921 (Mich. Ct. App. 1969) (noting that "different mortgages [on the same property] constitute different contracts," and therefore the rule against splitting a cause of action does not apply).   Moreover, res judicata does not apply unless "a single group of operative facts [in the two cases in question] give rise to the assertion of relief." *Pandemonium, Inc. v. Northcrest Dev., LLC*, No. 350526, 2021 WL 3117210, at *2 (Mich. Ct. App. July 22, 2021) (quoting *Adair v. State of Mich.*, 680 N.W.2d 386, 398 (Mich. 2004)).   This test is not met in the present case because the two guaranties became operative upon the occurrence of entirely different contingencies.   As noted above, the non-recourse carve-out guaranty was triggered when PS filed for bankruptcy, while the completion guaranty was triggered when PS failed to meet certain construction milestone dates.   Therefore, even if defendant had not waived this defense, the doctrine of res judicata would not bar the instant lawsuit because the Oakland Circuit Court judgment concerned a different, and transactionally unrelated, guaranty.

21

*Conclusion*

For the reasons stated above, the Court concludes that plaintiff is entitled to summary judgment on the completion guaranty in the amount prayed for.  Defendant's cross motion fails because it is based on the defense of res judicata, which defendant has waived and which is inapplicable in any event.  Finally, defendant may not amend its answer to assert res judicata as a defense because the defense would be futile.  Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is granted [ECF No. 129].

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied [ECF No. 130] .

IT IS FURTHER ORDERED that defendant's motion for leave to file a supplemental affirmative defense is denied [ECF No.153].

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  August 16, 2021
Detroit, Michigan