UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAN IV PACKARD SQUARE LLC,

   Plaintiff,         Civil Action No. 19-CV-12360

vs.             HON. BERNARD A. FRIEDMAN

CRAIG SCHUBINER,

   Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR RELIEF FROM JUDGMENT**

   This matter is presently before the Court on defendant's motion for relief from judgment under Fed. R. Civ. P. 60(b)(1) or, alternatively, Fed. R. Civ. P. 59(e) (ECF No. 161). Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall deny the motion.

   Defendant seeks relief from the Court's August 16, 2021, opinion and order granting plaintiff's motion for summary judgment, denying defendant's motion for summary judgment, and denying defendant's motion for leave to file a supplemental affirmative defense (ECF No. 159). The same day, the Court entered judgment for plaintiff and against defendant in the amount of $20,087,324, plus interest at the rate of 16% (ECF No. 160).

   In its August 16 opinion and order, the Court summarized the facts of this case as follows:

     This case arises from a construction project gone awry. In October 2014, Packard Square LLC ("PS") entered into a $53.78 million loan agreement with a private equity firm, plaintiff Can IV Packard

Square LLC ("Can IV"), to finance the construction of a mixed-use development consisting of apartments and retail space on a lot located on Packard Street in Ann Arbor, Michigan.  To secure the loan, PS signed a promissory note and granted Can IV a mortgage in the property.  Additionally, as part of the loan agreement, PS's principal and sole member, defendant Craig Schubiner ("Schubiner" or "guarantor"), executed two guaranties.  In the first, entitled "Non-Recourse Carve-Out Guaranty," Schubiner guaranteed repayment of the construction loan; in the second, entitled "Completion Guaranty," he promised to pay the "completion cost deficiency" in the event that PS failed to complete construction and plaintiff proceeded to do so.

Op. & Order at 1-2.  Plaintiff filed the present suit to "enforce the second of defendant's guaranties, the 'completion guaranty.'"[1]  *Id.* at 5.

---

[1] Defendant's liability under the guaranty was defined by Section 3, entitled Obligations of the Guarantor, which states in relevant part:

(a) If an Event of Default exists and (i) Lender thereafter acquires the Property by foreclosure . . . or (ii) a receiver for the Property is appointed by a court of competent jurisdiction at the request of Lender, Lender may, in its sole and absolute discretion, complete the Construction or, if a receiver has been so appointed, may, in its sole and absolute discretion, fund the completion of the Construction by the receiver . . . .

(b) Guarantors shall pay Lender any Completion Cost Deficiency (as defined below) determined by Lender from time to time during the course of Construction within five (5) days after Lender's written demand.

(c) "Completion Cost Deficiency" means, as of the date of determination, the amount by which the sum of (i) all remaining unpaid and projected Hard Costs and Soft Costs in accordance with the Construction Budget, the Construction Contract and the Loan Documents and (ii) all remaining and projected costs to enable the performance and satisfaction of all of the covenants of Borrower contained in the Loan Documents through the Final Completion with respect to Hard Costs and Soft Costs, as of such date, exceeds (A) all undisbursed Loan funds allocated to payment of Hard Costs or Soft

## I. Defendant's Motion for Relief from Judgment

In the instant motion, defendant seeks relief under Rule 60(b)(1) or, alternatively, Rule 59(e).  Defendant contends that

> [p]laintiff filed this case after obtaining a foreclosure judgment

---

Costs, (B) all sums in the Construction Reserve allocated to payment of Hard Costs or Soft Costs, and (C) all sums in the Construction Disbursement Account allocated to payment of the Hard Costs or Soft Costs.

Completion Guaranty § 3.  Section 4 of the guaranty, entitled Remedies, states:

> If Guarantor fails to promptly perform any of the Guaranteed Obligations and shall not have cured such failure within ten (10) days of Lender's demand, Lender shall have the following remedies:
>
> (a) Commence any and all remedies for an Event of Default under the Loan Agreement, Security Instrument and other Loan Documents;
>
> (b) At Lender's option, . . . to proceed to perform on behalf of Guarantor any or all of the Guaranteed Obligations and Guarantor shall upon demand and whether or not construction is actually completed by Lender, pay to Lender all sums expended by Lender in performing the Guaranteed Obligations together with interest thereon at the highest rate specified in the Note; and
>
> (c) From time to time and without first requiring performance by Guarantor or exhausting any or all security for the Loan, to bring any action at law or in equity or both to compel Guarantor to perform the Guaranteed Obligations, and to collect in any such action compensation for all loss, cost, damage, and expense sustained or incurred by Lender as a direct or indirect consequence of the failure of Guarantor to perform the Guaranteed Obligations together with interest thereon at the rate applicable to the principal balance of the Note.

*Id.* § 4.  In § 14 of the guaranty, the guarantor also agreed to "reimburse Lender for all actual attorneys' fees, costs and expenses . . . incurred by Lender in connection with the enforcement of Lender's rights under this Guaranty or any of the other Loan Documents . . . ."  *Id.* § 14.

3

against the Packard Square property and collateral from which it recovered $75,000,000 in cash equivalent proceeds. Under Michigan law, a mortgagee's credit bid used to purchase property at a foreclosure sale is tantamount to receiving cash from a third party. The facts were undisputed that Plaintiff used $37,823,096 of the cash equivalent proceeds to fully repay all the costs expended by the receiver to complete construction of the project. The $20,087,324 that Plaintiff computed as the completion cost deficiency was fully encompassed within the $37,823,096 repayment of the receiver loan.

Although Plaintiff had the right to pursue all its remedies to recover the increased costs of construction that it funded, it was only entitled to a single recovery. Once Plaintiff was repaid by the collateral proceeds, it no longer had any damage claim under the Completion Guaranty for the same costs. Under fundamental principles of Michigan law, a claimant is not entitled to profit from a damage award or obtain a double recovery. The claimant is only entitled to receive compensation for its actual losses. The same fundamental principle exists under Michigan's debtor-creditor laws and bars a lender from recovering the full amount of the debt from both the collateral and person responsible for the payment. Under Michigan law, Plaintiff could not establish the element of damages to support its breach of contract action because it had already been fully compensated for the same claimed losses by its recovery of the foreclosure judgment.

Def.'s Br. at 1-2. Defendant contends that by awarding plaintiff "a double or 200% recovery," *id*. at 3, "the judge has made a substantive mistake of law or fact" warranting relief under Rule 60(b)(1). *Id*. at 7.

Defendant further argues that the Court's 16% interest award was "clearly erroneous" because this case involves only the completion guaranty. *Id*. at 20. Defendant states that "[t]he 16% interest rate that the Court allowed came from the note evidencing the Packard Square loan," not the completion guaranty, the latter of which did not contain an interest component. *Id*. at 21. Defendant adds that "[u]nder federal law the Court may not award the contract rate of interest without an explicit agreement between the parties to use that rate," which,

4

defendant contends, was not the case here. *Id*. at 21-22.

In response, plaintiff argues that defendant's motion merely "makes the same arguments that the Court already considered–and rejected–when it granted summary judgment in Can IV's favor," Pl.'s Resp. Br. at 2, and is therefore "nothing more than a belated and improper motion for reconsideration brought under the guise of Rules 59 and 60." *Id*. at 1. As to the timeliness of defendant's motion, plaintiff notes that E.D. Mich. LR 7.1(h)(1), which governs motions for rehearing or reconsideration, requires that such motions be filed within fourteen days after entry of the judgment or order, whereas defendant waited twenty-eight days to file the instant motion. *See id*. at 3. Plaintiff contends that the Court should reject defendant's motion on these grounds alone. Plaintiff adds that if the Court construes defendant's motion as one brought under Rules 59(e) and 60(b)(1), the motion should still be denied because defendant is attempting to relitigate arguments he previously presented. *See id*. at 4. The proper avenue for such arguments, plaintiff contends, is through an appeal. *See id*.

In reply, defendant acknowledges that he did previously present the arguments raised in his instant motion, but contends that the Court failed to address those arguments in its August 16 opinion and order. *See* Def.'s Reply Br. at 3.

## II. Legal Standards

Rule 60(b)(1) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." "It is well settled that the [ruling on] a motion to set aside judgment under Rule 60(b)(1) is a matter addressed to the sound discretion of the trial court." *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 683 (6th Cir. 1999). The Sixth Circuit has stated that

> a Rule 60(b)(1) motion is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order.

*United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002). The Sixth Circuit has also noted that "relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." "The disposition of a motion filed pursuant to Fed. R. Civ. P. 59(e), is entrusted to the [c]ourt's sound discretion." *Burt v. Zych*, No. 09-CV-10618, 2009 WL 799033, at *1 (E.D. Mich. Mar. 23, 2009) (internal quotation marks omitted). "Under Rule 59, a court may alter the judgment based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (internal quotation marks omitted). "A Rule 59(e) motion, however, is not intended as a vehicle to relitigate previously considered issues . . . [.] [T]he 'proper vehicle for [such] relief is an appeal' rather than a motion to alter or amend." *Burt*, 2009 WL 799033, at *1 (internal quotation marks omitted).

## III. Analysis

For the following reasons, the Court concludes that defendant's motion should be denied. Defendant essentially raises the same claims that he has previously presented and that this Court has considered and rejected. In the August 16 opinion and order, the Court stated that

6

> [d]espite defendant's efforts to muddy the waters, the completion guaranty is crystal clear. In the event of PS's default (a fact that is undeniably established), defendant promised to pay plaintiff all hard and soft costs to complete construction of the project minus (A) undisbursed loan funds, (B) "all sums in the Construction Reserve," and (C) "all sums in the Construction Disbursement Account." Completion Guaranty § 3(c). Plaintiff made this calculation and demanded that defendant pay it. When defendant failed to do so within five days, he was in breach of the guaranty. Defendant does not contest the accuracy of the numbers plaintiff used in making this calculation, and he has offered no alternative calculation other than to argue that he owes nothing.

Op. & Order at 9. The Court specifically rejected "defendant's argument that plaintiff has no damages and that plaintiff would receive a windfall if it is permitted to enforce the completion guaranty." *Id*. at 10. The Court stated that

> [t]he measure of damages for a breach of contract is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe*, 865 N.W.2d at 921-22 (quoting *Ferguson*, 731 N.W.2d at 99). In the present case, if defendant had honored the completion guaranty, plaintiff would have received the funds in the amount the parties agreed plaintiff is entitled to receive, i.e., the completion cost deficiency. That is the "pecuniary value of the benefit" plaintiff expected from this guaranty. It is irrelevant whether, as defendant argues, the property is now worth more than the parties expected or that it is worth more than plaintiff's $75 million credit bid or that plaintiff profited from certain tax credits or from defendant's contribution of the land on which the project was built or from the rental income the property is producing. *See* Def.'s Resp. at 16-24. These arguments show only that plaintiff may have realized a return on its investment, but they do nothing to detract from defendant's obligation under the guaranty, which is to pay the completion cost deficiency as calculated in the agreed upon fashion.

*Id*.

As to defendant's arguments regarding the 16% interest rate, § 4 of the completion guaranty, entitled Remedies, states that

7

> [i]f the Guarantor fails to promptly perform any of the Guaranteed
> Obligations and shall not have cured such failure within ten (10)
> days of lender's demand, Lender . . . [may] bring any action at law
> or in equity or both to compel Guarantor to perform the Guaranteed
> Obligations, and to collect in any such action compensation for all
> loss, cost, damage, and expense sustained or incurred by Lender as
> a direct or indirect consequence of the failure of Guarantor to
> perform the Guaranteed Obligations together with interest thereon
> at the rate applicable to the principal balance of the Note.

Completion Guaranty § 4.  Defendant mistakenly argues that the completion guaranty does not

contain an interest component.  Rather, the parties agreed that the completion guaranty would

provide for the same interest rate as the underlying note, which, defendant acknowledges, was

16%.

      While defendant clearly disagrees with the Court's conclusions in this matter,

Rules 59 and 60 are not intended as avenues for relitigating arguments already raised and decided

by the Court.  Rather, the proper vehicle for the relief defendant seeks is an appeal.  Accordingly,

      IT IS ORDERED that defendant's motion for relief from judgment is denied.


                                    s/Bernard A. Friedman_____
                                    BERNARD A. FRIEDMAN
Dated:  October 13, 2021          SENIOR UNITED STATES DISTRICT JUDGE
       Detroit, Michigan